## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## MISSOULA DIVISION

———————————————————————

VANESSA GAUDETTE,

                  Plaintiff,

       vs.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                Defendant.

CV 11-135-M-DWM-JCL

FINDINGS & RECOMMENDATION
OF UNITED STATES
MAGISTRATE JUDGE

———————————————————————

    Plaintiff Vanessa Gaudette brings this action under 42 U.S.C. § 405(g)

seeking judicial review of the decision of the Commissioner of Social Security

denying her application for disability insurance benefits under Title II of the

Social Security Act ("the Act"), 42 U.S.C. §§ 401-433.

    Gaudette applied for benefits in January 2008, alleging disability since

November 29, 2007, due to "toxic encephalopathy, reactive airway disease,

autonomic nervous system dysfunction, immune deregulation,

hypogammaglobulinemia, vasculitis, asthma, and chemical sensitivity."  Tr. 156-

64, 191.  Gaudette later amended her onset date to September 1, 2008.  Tr. 43.

PAGE 1

Gaudette's application was denied initially and on reconsideration. Tr. 114, 117. After an administrative hearing at which Gaudette appeared with counsel, an Administrative Law Judge found that Gaudette was not disabled within the meaning of the Act. Tr. 10-35; 36-113. The Appeals Council denied Gaudette's subsequent request for review, thereby making the ALJ's decision the agency's final decision for purposes of judicial review. Tr. 1-7. Jurisdiction vests with this Court pursuant to 42 U.S.C. § 405(g).

Gaudette was 39 years old at the time of her alleged onset date, and 41 years old when the ALJ issued his decision in June 2010.

## I.   STANDARD OF REVIEW

This Court's review is limited. The Court may set aside the Commissioner's decision only where the decision is not supported by substantial evidence or where the decision is based on legal error. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005); *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Widmark v. Barnhart,* 454 F.3d 1063, 1070 (9th Cir. 2006).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d

1152, 1156 (9th Cir. 2001). This Court must uphold the Commissioner's findings "if supported by inferences reasonably drawn from the record." *Batson v. Commissioner of Social Security Administration*, 359 F.3d 1190, 1193 (9th Cir. 2004). "[I]f evidence exists to support more than one rational interpretation," the Court "must defer to the Commissioner's decision." *Batson*, 359 F.3d at 1193 (*citing Morgan v. Commissioner*, 169 F.3d 595, 599 (9th Cir. 1999). This Court "may not substitute its judgment for that of the Commissioner." *Widmark*, 454 F.3d at 1070 (*quoting Edlund*, 253 F.3d at 1156).

## II.   BURDEN OF PROOF

To establish disability, a claimant bears "the burden of proving an 'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which...has lasted or can be expected to last for a continuous period of not less than 12 months.'" *Batson*, 359 F.3d at 1193-94 (*quoting* 42 U.S.C. § 423(d)(1)(A)).

In determining whether a claimant is disabled, the Commissioner follows a five-step sequential evaluation process. 20 C.F.R. § 404.1520. The claimant bears the burden of establishing disability at steps one through four of this process. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). At the first step, the ALJ will consider whether the claimant is engaged in "substantial gainful activity." 20

C.F.R. § 404.1520(a)(4)(I).  If not, the ALJ must determine at step two whether the claimant has any impairments that qualify as "severe" under the regulations.  20 C.F.R. § 404.1520(a)(4)(ii).  If the ALJ finds that the claimant does have one or more severe impairments, the ALJ will compare those impairments to the impairments listed in the regulations.  20 C.F.R. § 404.1520(a)(4)(iii).  If the ALJ finds at step three that the claimant has an impairment that meets or equals a listed impairment, then the claimant is considered disabled.  20 C.F.R. § 404.1520(a)(iii).  If, however, the claimant's impairments do not meet or equal the severity of any impairment described in the Listing of Impairments, then the ALJ must proceed to step four and consider whether the claimant retains the residual functional capacity (RFC) to perform his or her past relevant work.  20 C.F.R. § 404.1520(a)(4)(iv).  If the claimant establishes an inability to engage in past work, the burden shifts to the Commissioner at step five to establish that the claimant can perform other work in the national economy.  20 C.F.R. § 404.1520(a)(4)(v).

## III.  <u>DISCUSSION</u>

Following the steps in the sequential evaluation process, the ALJ first found that Gaudette met the insured status requirement of the Act through December 31, 2013, and had not engaged in substantial gainful activity since the September 1, 2008, amended onset date.  Tr. 15.  The ALJ found at step two that Gaudette had

"chemical sensitivity and related arthralgias," which were severe impairments. Tr. 15. At step three, the ALJ determined that Gaudette did not have an impairment or combination of impairments that met or medically equaled any impairment described in the Listing of Impairments. Tr. 16. The ALJ also found that while Gaudette's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms," her "statements concerning the intensity, persistence, and limiting effects of her symptoms [were] not credible to the extent they [were] inconsistent with the residual functional capacity assessment....." Tr. 25. Having done so, the ALJ next determined that Gaudette retained the residual functional capacity to perform a limited range of sedentary and light work. Tr. 25. The ALJ then found that Gaudette could return to her past relevant work as an underwriter and claims representative. Tr. 28. Alternatively, he concluded at step five that there remained a significant number of jobs in the economy that Gaudette could perform, including sedentary work as a data exam clerk, telephone representative, or data entry operator, and light level work as a survey worker. Tr. 29.

## A. Severe Impairments

Gaudette argues the ALJ erred at step two by not including any mental impairments as severe impairments, and by omitting asthma from the list of her

severe physical impairments.

An impairment is "severe" if it significantly limits the claimant's ability to perform basic work activities. 20 C.F.R. § 416.921. An impairment may be considered non-severe if the evidence establishes only a slight abnormality that has no more than a minimal effect on an individual's ability to work. *See* SSR 85-28; *Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir. 1988). The claimant bears the burden of establishing the severity of an alleged impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings. 20 C.F.R. § 416.908.

### 1. Mental Impairments

Gaudette maintains the ALJ overlooked evidence showing that she suffers from an anxiety-related disorder, cognitive disorder, and affective disorder.

Several of Gaudette's health care providers mention mental health concerns in their records, and refer to symptoms of depression and anxiety. See e.g. Tr. 525, 542, 835, 1164-65. While the ALJ did not identify any mental impairments in the list of Gaudette's severe impairments, it is clear from the text of the ALJ's decision that he considered the evidence concerning her mental health and accepted that she suffered from anxiety and depression. Just a few sentences below the heading setting forth "chemical sensitivity and related arthralgias" as

severe impairments, the ALJ wrote that Gaudette had "an assortment of mental and physical complaints as described above" that were severe. Tr. 15. And in his ensuing discussion, the ALJ specifically considered the functional impact of Gaudette's mental impairments. Tr. 16-18. The ALJ found, for example, that Gaudette's mental impairments caused moderate difficulties in social functioning and activities of daily living. Tr. 17. Because the record reflects that the ALJ thoroughly considered and evaluated the evidence relating to Gaudette's mental impairments and crafted his residual functional capacity assessment accordingly, any error in omitting those mental impairments at step two was harmless. See e.g. *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).

    2.   Asthma

Gaudette maintains the ALJ erred because he did not identify "asthma as a severe impairment in combination with her chemical sensitivities." Dkt. 12, at 8. As with Gaudette's mental impairments, however, the ALJ discussed and accounted for the functional effects of her asthma later in the sequential evaluation process. Tr. 26. For example, the ALJ accepted the opinion of reviewing physician Dr. M. Brenner that Gaudette had asthma, which was largely controlled by medication. Tr. 26. Nonetheless, the ALJ accounted for the fact that Gaudette had asthma by stating in his residual functional capacity assessment that she "must

avoid even moderate exposure to chemicals, fumes, odors, dust and gas." Tr. 18.

Gaudette does not identify any other limitations associated with her asthma. Any

error on the ALJ's part in failing to name asthma as a severe impairment at step

two was harmless.

## B.    Listed Impairments

Gaudette argues that the ALJ erred at step three by finding that she did not

satisfy the criteria for presumptive disability under Listing 12.02 for organic

mental disorders or Listing 12.06 for anxiety related disorders.

At this third step in the sequential evaluation process, the ALJ must

consider whether the claimant's impairment, or combination of impairments,

meets or equals an impairment listed in 20 C.F.R. P. 404, Subpt. P, App. 1. "If the

claimant meets or equals one of the listed impairments, a conclusive presumption

of disability applies." *Marcia v. Sullivan*, 900 F.2d 172, 174 (9th Cir. 1990). To

meet the requirements of a listing, the claimant "must have a medically

determinable impairment(s) that satisfies all of the criteria in the listing." 20

C.F.R. § 404.1525(d).

To demonstrate medical equivalence, the claimant must have impairments,

considered alone or in combination, that are "at least equal in severity and duration

to the criteria of any listed impairment." 20 C.F.R. § 404. 1526(a). The Ninth

Circuit has made clear that the "ALJ must evaluate the relevant evidence before concluding that a claimant's impairments do not meet or equal a listed impairment." *Lewis v. Apfel*, 236 F.3d 505, 512 (9th Cir. 2001). Nevertheless, the burden remains with the claimant, who must present medical evidence that his impairments meet or medically equal all of the criteria of a listed impairment. *See Sullivan v. Zebley*, 493 U.S. 521, 531 (1990).

       1.    <u>Listing 12.02</u>

Gaudette maintains she has a cognitive disorder that satisfies the criteria of Listing 12.02, which governs disability based on organic mental disorders. For support, Gaudette primarily relies on a neuropsychological consultation report prepared by Dr. Nancy Didriksen. Tr. 1504-46. Dr. Didriksen examined Gaudette in October 2010, and diagnosed her with a cognitive disorder not otherwise specified, a bipolar disorder, and chemical/environmental sensitivity. Tr. 1542. Gaudette argues that Dr. Didriksen's report establishes that she suffers from a listing-level cognitive disorder, particularly when read in conjunction with notes from her long-time treating nurse practitioner Dana Hillyer.

Notably, however, Gaudette did not raise this issue in front of the ALJ and did not allege disability based on a cognitive disorder. Presumably, this is because Dr. Didriksen did not examine Gaudette until October 2010 – approximately four

months after the ALJ issued his written decision. Because the ALJ did not have

the benefit of Dr. Didriksen's report and Gaudette did not claim to have a

disabling cognitive disorder, he can hardly be faulted for not considering Listing

12.02.

Gaudette did submit Dr. Didriksen's report in support of her request for

review by the Appeals Council. As discussed below, however, because Gaudette

has not shown that she had good cause for not seeking Dr. Didriksen's report

earlier, this Court does not consider it. Even if the Court were to consider the

report, however, it does not establish that the requirements of Listing 12.02 are

satisfied.

<blockquote>2. <u>Listing 12.06</u></blockquote>

Gaudette next argues the ALJ erred by finding she did not meet or equal the

criteria of Listing 12.06 for anxiety related disorders. Listing 12.06 requires that a

claimant's anxiety related disorder satisfy certain A and B criteria, or A and C

criteria. The B criteria require that a claimant's mental impairment must result in

at least two of the following: (1) marked restriction of activities of daily living; (2)

marked difficulties in maintaining social functioning; (3) marked difficulties in

maintaining concentration, persistent or pace; (4) repeated episodes of

decompensation, each of extended duration. Alternatively, the a claimant may

satisfy the C criteria by demonstrating a "complete inability to function independently outside the area of one's home." 20 C.F.R. Part 404, Subpart P, Appendix 1 §§ 12.06.

Medical expert Dr. Paul Bach testified based on his review of the record that Gaudette had moderate limitations in performing daily activities, moderate difficulties maintaining social functioning, no limitations in concentration persistence or pace, and no episodes of decompensation. Tr. 97. The ALJ permissibly relied on Dr. Bach's testimony in finding that Gaudette did not satisfy the B criteria of Listing 12.06, and Gaudette does not argue otherwise. Nor does Gaudette argue that she is completely unable to function independently outside of her home as contemplated by the C criteria. Because Gaudette has not shown that she satisfied either the B or C criteria, the ALJ appropriately found that she was not presumptively disabled based on an anxiety-related disorder.

### 3.    Listing 12.04

Listing 12.04 for affective disorders requires that a claimant satisfy the listed A and B criteria, or just the C criteria. The B criteria for this listing are identical to those set forth in Listing 12.06 and require at least two of the following: (1) marked restriction of activities of daily living; (2) marked difficulties in maintaining social functioning; (3) marked difficulties in

maintaining concentration, persistent or pace; (4) repeated episodes of decompensation, each of extended duration. 20 C.F.R. Part 404, Subpart P, Appendix 1 §§ 12.04.  As discussed above, the ALJ found with record support that Gaudette had only moderate limitations in daily activities and social functioning, no limitations in concentration persistence or pace, and no episodes of decompensation.  Tr. 97.

While Gaudette has therefore failed to establish that she meets the B criteria, Listing 12.04 provides in the alternative that a claimant can meet the required level of severity for affective disorders by satisfying just the C criteria. Paragraph C requires the following:

> Medically documented history of a chronic affective disorder of at least 2 years duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:
> 1.      Repeated episodes of decompensation, each of extended duration; or
> 2.      A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or
> 3.      Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

> 20 C.F.R. Part 404, Subpart P, Appendix 1 §§ 12.04

Medical expert Dr. Paul Bach testified that Gaudette did not meet either the

first or third of these criteria. Tr. 98. As to the second criteria, however, Dr. Bach stated that Gaudette did have "a residual disease process that has resulted in such marginal adjustment that a change in the environment would be predicted to cause the individual to be [de]compensated." Tr. 99. As Dr. Bach explained it, if Gaudette were put anywhere "other than the relatively safe holding environment she's created for herself," she would likely get exposed to substances or events that would cause her to decompensate. Tr. 99.

The ALJ acknowledged this portion of Dr. Bach's testimony, but found it did not establish that Gaudette satisfied the listing because "he expressed no opinion as to the duration or severity of such an episode." Tr. 18. As Gaudette correctly points out, however, the C2 criteria does not require a specific finding as to the duration or severity of any potential episode of decompensation. The ALJ did not provide any other basis for rejecting Dr. Bach's opinion.

The Commissioner nonetheless argues that this Court should reject Dr. Bach's opinion based on the fact that Gaudette has not had any repeated episodes of decompensation in the past. Dkt. 20, at 9. Because Dr. Bach testified that Gaudette had not had any episodes of decompensation in the past, the Commissioner maintains it logically "follows that she did not have a residual disease process that would cause her to decompensate with a minimal increase in

mental demands or change in environment."  Dkt. 20, at 9.

While the Commissioner thus attempts to bolster the ALJ's decision by providing an additional basis for rejecting Dr. Bach's opinion, the Court may "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely."  *Orn v. Astrue,* 495 F.3d 625, 630 (9th Cir. 2007).  Under *Orn*, it would be error for this Court to affirm the ALJ's decision on grounds proposed by the Commissioner.  Because the ALJ did not provide specific and legitimate reasons for discounting Dr. Bach's testimony, this case should be remanded for further proceedings, as discussed below.

## C.    Credibility

Gaudette argues the ALJ did not cite sufficiently clear and convincing reasons for finding her less than entirely credible.

In considering a claimant's credibility with regard to subjective symptom testimony an ALJ must perform a two-stage analysis:  (1) the *Cotton* test; and (2) an analysis of the claimant's credibility as to the severity of the symptoms. *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) (citing  *Cotton v. Bowen*, 799 F.2d 1403 (9th Cir. 1986)).  The *Cotton* test requires only that the claimant (1) produce objective medical evidence of an impairment; and (2) show that the

impairment(s) could reasonably be expected to produce some degree of symptom. *Smolen*, 80 F.3d at 1281-82 (*citing Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) and *Cotton*, 799 F.2d at 1407-08; 20 C.F.R. § 404.1529(a) and (b)).

If the *Cotton* test is satisfied and there is no evidence of malingering, then the ALJ can reject subjective testimony as to the severity of a claimant's symptoms only by citing specific, clear and convincing reasons for doing so. *Smolen*, 80 F.3d at 1283-84 (*citing Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993)). To assess a claimant's credibility, the ALJ may consider ordinary credibility evaluation techniques, unexplained or inadequately explained failure to seek or follow treatment, and the claimant's daily activities. *Smolen*, 80 F.3d at 1284. However, "[g]eneral findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaint." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (*quoting Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)).

Here, the ALJ found that Gaudette suffers from severe impairments that could reasonably be expected to produce some degree of symptom. Gaudette has thus made a showing sufficient to meet both prongs of the *Cotton* test.

The ALJ considered Gaudette's testimony as to the debilitating extent of her symptoms, but found her less than entirely believable for a number of reasons.

PAGE 15

The ALJ began by citing to inconsistencies between Gaudette's testimony and her medical records. Gaudette testified that she often suffered from "bone crushing" fatigue that left her unable to concentrate or stand up. Tr. 65. She explained that she had to stop working because her reactions to various chemicals left her fatigued and unable to concentrate enough to do her job. Tr. 52. As the ALJ noted, however, Gaudette reported to nurse practitioner Dana Hillyer in December 2008 that she was working on craft projects, reading, and keeping a journal. Tr. 23, 889. And in March 2009, Gaudette told Hillyer that she had created a 4-minute video on her computer detailing her experience with multiple chemical sensitivities, and forwarded it on to the governor. Tr. 23, 870. The ALJ permissibly found that this testimony was contradicted by the "multiple mentions of reading, hobbies, crafts, and computer skills" set forth in the medical records. Tr. 24.

The ALJ also discounted Gaudette's testimony in part based on the lack of objective medical findings and lack of treatment. Tr. 24. In particular, the ALJ found with record support that while Gaudette complained of joint pain and swelling, she had not sought "any type of orthopedic or rheumatological" treatment, and there were "no objective or radiological findings to support this claim." Tr. 24. This too was a legitimate basis for questioning Gaudette's

credibility.  See e.g.  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1040 (9th Cir. 2007) (while an ALJ may not discount a claimant's testimony based only on the lack of objective medical evidence, it is one appropriate factor for the ALJ to consider); *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005).

These were sufficiently clear and convincing reasons for discrediting Gaudette's subjective testimony.

### D.  Medical Opinions

Gaudette maintains the ALJ did not provide sufficient rejecting the opinion of her treating and examining physicians.

A treating physician's opinion is entitled to greater weight than that of an examining physician on the basis that he has a "greater opportunity to observe and know the patient."  *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).  An examining physician's opinion in turn "carries more weight than a reviewing physician's."  *Holohohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001).  The weight given a treating or examining physician's opinion depends on whether it is supported by sufficient medical data and is consistent with other evidence in the record.  20 C.F.R. § 404.1527(d)(2).

To discount the controverted opinion of a treating physician, the ALJ must provide "'specific and legitimate reasons' supported by substantial evidence in the

record." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (quoting *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995)). Among the situations in which the ALJ must cite such specific and legitimate reasons is when a treating physician's opinion is contradicted by a nontreating physician, and the nontreating physician's opinion is not based on independent clinical findings, or is based on the same information used by the treating physician. *Andrews*, 53 F.3d at 1041. The ALJ can accomplish this by setting forth "a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

### 1. Dr. Rea

In October and November 2008, Gaudette sought treatment from Dr. William Rea at the Environmental Health Center in Dallas, Texas. Tr. 719-829. Dr. Rea performed what he described as an "extensive diagnostic work-up" and diagnosed her with "Toxic Encephalopathy, Reactive Airway Disease, Autonomic Nervous System Dysfunction, Immune Deregeulation, Hypogammaglobulinemia, Vasculitis, Allergic Rhinosinusitis, Chemical Sensitivity, Arthralgia, Asthma, Dermatitis, and Cerebral Palsy." Tr. 676. Dr. Rea concluded that Gaudette was "totally disabled by her neurotoxicity and sensitivities." Tr. 683.

The ALJ rejected Dr. Rea's opinion in part because his self-described

speciality as a clinical ecologist "is not a recognized medical speciality." Tr. 25. The ALJ also declined to give Dr. Rea's opinion any significant weight because the hair analysis, pupillography SPECT scan tests he employed "are not considered valid scientific tests." Tr. 25. The ALJ's reasoning is supported by the opinion of state agency physician Dr. M. Brenner, who completed a physical residual functional capacity assessment form in April 2009. Tr. 857-64. Dr. Brenner addressed Dr. Rea's report and explained that naturopathy and clinical ecology are not recognized medical specialties. Tr. 863. Dr. Brenner also indicated that Dr. Rea's testing was not scientifically valid, and characterized many of his conclusions as meaningless. Tr. 863. The ALJ legitimately relied on Dr. Brenner's assessment as a basis for rejecting Dr. Rea's opinion.

2.   Dr. Rogers

Gaudette next argues the ALJ did not provide legally sufficient grounds for rejecting the opinion of her treating physician Dr. Neal Rogers. In particular, she points to the fact that Dr. Rogers believed there was "a chemical component to her asthma" and advised her "to avoid all chemicals, fragrances, and smoke, etc., as much as possible at home and in the work place." Tr. 329. Gaudette maintains the ALJ disregarded Dr. Rogers' recommendation and erroneously found that she could tolerate some exposure to chemicals, fumes, odors, dust, and gas.

But the ALJ essentially accepted Dr. Rogers' opinion, finding as he did that Gaudette "must avoid even moderate exposure to chemicals, fumes, odors, dust and gas" and could only have "arms-length contact" with a "minimal number of co-workers." Tr. 18. This limitation is consistent with Dr. Rogers' opinion, which was that Gaudette should avoid chemical and other irritants as much as possible in the workplace.

### E. Other Medical Sources

Gaudette next argues the ALJ erred by disregarding the opinions of her naturopathic physicians and nurse practitioner Dana Hillyear.

Gaudette agrees that these individuals do not qualify as an acceptable medical source. 20 C.F.R. §§ 404.1513(a),(d), 416.913(a),(d); SSR 06-3p. Only acceptable medical sources can render medical opinions. SSR 06-3p; 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2). Information from "other sources" may nevertheless "provide insight into the severity of the impairment and how it affects the individual's ability to function." SSR 06-3p. The ALJ should evaluate opinion evidence from "other sources," and in doing so consider such factors as how long the source has known the claimant, how frequently the source has seen the individual, whether the opinion is consistent with other evidence, how well the source explains the opinion, the degree to which the source presents relevant

evidence to support the opinion, and whether the source has an area of expertise related to the individual's impairment.  SSR 06-3p.  An ALJ may reject "other source" opinions by providing "germane" reasons, and need not cite the specific and legitimate reasons necessary to reject the contradicted opinion of an acceptable medical source.  *See Turner v. Comm'r of Social* Security, 613 F.3d 1217, 1224 (9th Cir. 2010); *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993).

The ALJ recognized that Gaudette had primarily "sought alternative treatment modalities from naturopathic providers" and recounted much of that evidence in his decision.   Tr. 19-24.  The ALJ noted, for example, that Gaudette had seen natural medicine provider Jeff Roush several times in 2008, and he administered "bi-weekly Glutathioine IVs with the goal of normalizing her respiratory function and decreasing her sensitivity to chemicals."  Tr. 21.  The ALJ also discussed the fact that Gaudette sought treatment from naturopathic physician Dr. Michael Bergkamp, who wrote in November 2008 that Gaudette's "anger and frustration about not being able to control the environment [were] becoming self defeating and self toxic" and indicated he would not schedule another appointment with her unless those concerns were addressed.  Tr. 21, 1163.

The ALJ also discussed Gaudette's treatment at the South West Naturopathic Medical Center in Arizona, her treatment at the Black Bear

PAGE 21

Naturopathic Clinic beginning in July 2009, and the fact that she has seen nurse practitioner Dana Hillyer for various mental health issues since 2003. Tr. 22-23. The ALJ effectively credited much of what these alternative health care providers had to say, finding as he did that Gaudette suffered from chemical sensitivity and mental impairments that significantly limited her ability to perform work related tasks. Thus, while Gaudette argues it was improper for the ALJ to discount their opinions because the were not acceptable medical sources, the record reflects that he took much of what they had to say into account. Gaudette does not identify any specific error on the ALJ's part in assessing the many "other source" opinions in the record.

### F.    New Evidence Submitted to Appeals Council

Approximately four months after the ALJ issued his written decision, Dr. Nancy Didriksen examined Gaudette and prepared a neuropsychological consultation report. Tr. 1504-46. Dr. Didriksen diagnosed Gaudette with a cognitive disorder not otherwise specified, a bipolar disorder, and chemical/environmental sensitivity. Tr. 1542. Gaudette submitted Dr. Didriksen's report in support of her request for review by the Appeals Council.

The Appeals Council denied Gaudette's request for review, and in doing so stated that it had "received additional evidence which it [was] making part of the

record." Tr. 6.  That evidence included the Dr. Didriksen's report.  Tr. 6.   In its

Notice of Appeals Council Action, however, the Appeals Council found that

because Dr. Didriksen prepared her report approximately four months after the

ALJ's decision, it was "about a later time" and did "not affect the decision about

whether [Gaudette] was disabled beginning on or before June 2010."  Tr. 2.

  While the Appeals Council looked at Dr. Didriksen's report and found that

it did not relate to the time period at issue, it did not "consider" the evidence.  See

20 C.F.R. § 404.970(b) ("If new and material evidence is submitted, the Appeals

Council shall consider the additional evidence only where it relates to the period

on or before the date of the administrative law judge hearing decision.").

  As the Commissioner argues on summary judgment, then, this Court is to

consider Dr. Didriksen's report under sentence six of 42 U.S.C. § 405(g).  Under

sentence six, remand is appropriate only if the claimant submits new evidence and

shows that the evidence is material to her disability, and that she had good cause

for not submitting the evidence earlier.  *Mayes v. Massanari*, 276 F.3d 453, 462

(9th Cir. 2001).   "A claimant does not meet the good cause requirement simply by

obtaining a more favorable report from an expert witness once his claim is denied.

... The claimant must establish good cause for not seeking the expert's opinion

prior to the denial of his claim."  *Clem v. Sullivan*, 894 F.2d 328, 332 (9th Cir.

1990).

Gaudette has not responded to the Commissioner's summary judgment motion, and does not argue that she had good cause for not seeking Dr. Didriksen's opinion any earlier. Accordingly, remand for consideration of Dr. Didrisksen's report is not appropriate.

Even if the Appeals Council had in fact "considered" Dr. Didriksen's report, the result would be the same. Where "the Appeals Council considers new evidence in deciding whether to review a decision of the ALJ, that evidence becomes part of the administrative record, which the district court must consider when reviewing the Commissioner's final decision for substantial evidence." *Brewes v. Commissioner SSA*, — F.3d — , 2012 WL 2149465 *4 (9th Cir. June 14, 2012). The Court has reviewed Dr. Didriksen's report and is satisfied that it would not provide a basis for changing the ALJ's decision.

## G. Remand for Further Proceedings or Award of Benefits

The decision whether to remand for further proceedings or for an immediate award of benefits is within the Court's discretion. *Harman v.* Apfel, 211 F.3d 1172, 1178 (9th Cir. 2000). Remand for an award of benefits is appropriate if there is no useful purpose to be served by furthers proceedings or if the record is fully developed. *Strauss v. Commissioner*, 635 F.3d 1135, 1138-39 (9th Cir.

2011).   The Court should remand for an award of benefits if: (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and; (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.  *Harman,* 211 F.3d at 1178.

Here, further proceedings would be useful because it is not clear whether the ALJ would be required to find Gaudette disabled if he had properly considered Dr. Bach's opinion as to the C criteria of Listing 12.04.  For one thing, it is not clear whether Dr. Bach also believed that Gaudette satisfied the prerequisite criteria of paragraph C, which require a "[m]edically documented history of a chronic affective disorder of at least 2 years duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support."  20 C.F.R. Part 404, Subpart P, Appendix 1 §§ 12.04.   The ALJ is in a better position than this Court to evaluate the medical evidence, and giving the ALJ the opportunity to reevaluate whether Gaudette satisfied Listing 12.04 in light of Dr. Bach's testimony will remedy what this Court has identified as a defect in the original administrative proceedings.

PAGE 25

## IV.    Conclusion

Accordingly,

IT IS RECOMMENDED that Gaudette's motion for summary judgment be granted and the Commissioner's motion for summary judgment be denied.  The Commissioner's decision should be reversed and this matter should be remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion.

DATED this 29th day of June, 2012

Jeremiah C. Lynch
United States Magistrate Judge