IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | | |
|---|---|---|
| VANESSA GAUDETTE | ) | CV 11-135-M-DWM-JCL |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | ORDER |
| | ) | **FILED** |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | SEP 1 0 2012 |
| | ) | PATRICK E. DUFFY, CLERK |
| Defendant. | ) | By_____ |
| | ) | DEPUTY CLERK, MISSOULA |

Vanessa Gaudette seeks review of the Commissioner of Social Security's

decision to deny her application for disability insurance benefits under Title II of

the Social Security Act, 42 U.S.C. §§ 401–433. This matter was referred to

Magistrate Judge Lynch under 28 U.S.C. § 636.

Both Gaudette and the Commissioner move for summary judgment. Judge

Lynch recommends granting summary judgment in favor of Gaudette and denying

the Commissioner's motion. Specifically, Judge Lynch recommends that the Court

remand this matter to the Commissioner so that the Commissioner can reassess

whether Gaudette has an impairment under Listing 12.04. *See* 20 C.F.R. Part 404,

Subpart P, Appx. 1, § 12.04. Judge Lynch recommends denying Gaudette's motion

in all other respects. The Court agrees that this matter should be remanded to the

1

ALJ for the reasons that Judge Lynch provides and for additional reasons.

Because the parties are familiar with the facts of this case, they are restated here only when necessary to explain the Court's decision.

Gaudette is entitled to a de novo review of the specified findings or recommendations to which she timely objected. 28 U.S.C. § 636(b)(1). But the portions of Judge Lynch's Findings and Recommendation not specifically objected to are reviewed for clear error. *McDonnell Douglas Corp. v. Commodore Bus. Mach., Inc.*, 656 F.2d 1309, 1313 (9th Cir. 1981). General, conclusory objections do not warrant de novo review. *Dodson v. Frink*, 2012 WL 3263766, at *1 (D. Mont. Aug. 9, 2012) (citations omitted).

Here, Gaudette timely filed her objections to Judge Lynch's Findings and Recommendation. She offers five objections:

1.  Judge Lynch erred by not considering Dr. Didriksen's report.

2.  Contrary to Judge Lynch's recommendation, this matter should be remanded for an award of benefits, not further proceedings.

3.  Judge Lynch incorrectly concluded that the administrative law judge ("ALJ") properly rejected the medical opinions of Drs. Rea and Rogers.

4.  Judge Lynch incorrectly concluded that the ALJ had effectively given credit to the opinions and observations of Gaudette's mental health provider and naturopathic physicians.

2

> 5. Judge Lynch failed to address Gaudette's claims regarding her capacity to perform past relevant work.

(Objections, doc. 27.) The Court addresses each of these in turn.

## I.   Dr. Didriksen's report

Dr. Didriksen examined Gaudette in October 2010 and diagnosed her with a cognitive disorder not otherwise specified, a bipolar disorder, and chemical/environmental sensitivity. Tr. 1542. Dr. Didriksen prepared a neuropsychological consultation report, and Gaudette relied on that report to show that she satisfied the criteria of Listing 12.02—an organic mental disorder. The ALJ did not consider the report, though, because Dr. Didriksen's examination happened four months after the ALJ issued his written decision in June 2010. While the ALJ did not consider the report, Gaudette submitted it in support of her request for review by the Appeals Council.

The Appeals Council acknowledged Dr. Didriksen's report and made it part of the record. Tr. 6. But it concluded that the report did not affect the determination of whether Gaudette was disabled on or before the ALJ issued his decision because the report related to "a later time." Tr. 2.

Gaudette has two objections related to Dr. Didriksen's report. First, she objects to Judge Lynch's recommendation to not consider the report on account of

Gaudette's failure to show good cause for not submitting the report earlier.

Second, she objects to Judge Lynch's finding that the report is not related to the

time period on or before the ALJ issued his decision. Both of her objections are

well-taken.

The Appeals Council must consider new and material evidence only if it

relates to "the period on or before the date of the administrative law judge hearing

decision." *See* 20 C.F. R. § 404.970(b) ("If new and material evidence is

submitted, the Appeals Council shall consider the additional evidence only where

it relates to the period on or before the date of the administrative law judge hearing

decision."); *Brewes v. Commr. of Soc. Sec. Admin.*, 682 F.3d 1157, 1161–62 (9th

Cir. 2012) (discussing § 404.970(b)).

The claimant does not need to show good cause before submitting new

evidence to the Appeals Council. *Id.* at 1162 (citing 20 C.F.R. § 404.970(b);

*O'Dell v. Shalala*, 44 F.3d 855, 858 (9th Cir. 1994)). Regardless of whether there

is good cause for the late submission, the Appeals Council must consider the new

evidence if it relates to the time period before the ALJ's decision. *Id.*; 20 C.F.R. §

404.970(b).

When, however, new evidence is presented to the district court for the first

time—i.e., the evidence was not considered by Appeals Council—then the district

4

court will remand for consideration of that evidence only if the evidence is

"material and there is good cause for the failure to incorporate such evidence into

the record in a prior proceeding." 42 U.S.C. § 405(g). *Mayes v. Massanari*, 276

F.3d 453, 462 (9th Cir. 2001); *Clem v. Sullivan*, 894 F.2d 328, 332 (9th Cir. 1990);

*see also Rocha v. Astrue*, 2012 WL 748260, at *4 (D. Ariz. Mar. 7, 2012); *see also*

*Brewes*, 682 F.3d at 1164 ("Section 405(g) . . . applies only to new evidence that is

not part of the administrative record and is presented in the first instance to the

district court.")

Here, the Appeals Council's treatment of Dr. Didriksen's report is

confusing. On the one hand, the Council made clear that Dr. Didriksen's report did

not affect its decision because the new information in the report "is about a later

time" after the ALJ's June 21, 2010 decision. Tr. 2. This statement seems to

suggest that the Council did not "consider" Dr. Didriksen's report. Indeed, the

Appeals Council could not consider new information unless it related to the time

period on or before the ALJ's decision. 20 C.F.R. § 404.970(b). If the Appeals

Council did not consider Dr. Didriksen's report, then the question of whether this

Court should consider it would be subject to the materiality and good cause

standard in 42 U.S.C. § 405(g).

The plain language of the Council's decision, though, shows that the

5

Council "considered" the report. Under the heading "What We Considered" in the
Council's decision, the Council wrote: "[W]e considered the reasons you disagree
with the decision and the additional evidence listed on the enclosed Order of
Appeals Council." Tr. 2. The Order of Appeals Council plainly lists "Report from
Nancy Didrikesen [sic], Ph.D. dated October 21, 2010 and October 22, 2010." Tr.
6.

Given the Appeals Council's confusing decision, one can easily see why
Judge Lynch concluded that the Council did not consider the report. If the Council
did not believe that the report related to a time period on or before the ALJ's
decision, then the Council should not have considered the report. *See* 20 C.F.R. §
404.970(b). But, given the plain language of the Council's decision, the Court
must conclude that the Council did, in fact, consider the report. Tr. 2. The Council
said that it "considered" the additional evidence listed in the Order, and that Order
expressly lists Dr. Didriksen's report. Tr. 6.

Since the Appeals Council "considered" Dr. Didriksen's report, this Court
must consider it, too, regardless of whether Gaudette has good cause for not
submitting the report earlier. *See Brewes*, 682 F.3d at 1163 ("[W]e hold that when
the Appeals Council considers new evidence in deciding whether to review a
decision of the ALJ, that evidence becomes part of the administrative record,

6

which the district court must consider when reviewing the Commissioner's final decision for substantial evidence.")

Looking to Dr. Didriksen's report, the Court concludes that it relates to the time period on or before the ALJ issued his decision on June 21, 2010. Even though the report was completed after the ALJ's decision, the report thoroughly discusses Gaudette's mental condition before the decision was issued.

As discussed above, the Appeals Council concluded that the report had no bearing on its decision because the report did not relate to a time period on or before the ALJ's decision. This was error. Even if the Appeals Council technically "considered" the report, it did not properly or adequately consider the report. Proper or adequate consideration would have required the Council to evaluate Gaudette's claims in light of the report and the record as a whole. *See id.* at 1162; 20 C.F.R. § 404.970(b). Remand is appropriate here "so that the ALJ can reconsider its decision in light of the additional evidence." *Taylor v. Commr. of Soc. Sec. Admin.*, 659 F.3d 1228, 1233 (9th Cir. 2011).

## II.     Remand for further proceedings

Gaudette next argues that, contrary to Judge Lynch's recommendation, this matter should be remanded for an award of benefits, not further proceedings.

The decision to remand a case for payment of benefits is discretionary. The

Ninth Circuit has held that remand for further proceedings is appropriate (1)

"where there are outstanding issues that must be resolved before a disability

determination can be made" and (2) "it is not clear from the record that the ALJ

would be required to find the claimant disabled if all the evidence were properly

evaluated." *Taylor*, 659 F.3d at 1235. So a court should remand for an award of

benefits only when there are no outstanding issues and the record would clearly

require the ALJ to find the claimant disabled. *Id.* If neither the ALJ nor the

Appeals Council properly considered material evidence, then remand for further

proceedings is appropriate so that the Commissioner may properly consider that

evidence. *Id.*

As discussed above, neither the ALJ nor the Appeals Council properly

considered Dr. Didriksen's report. So remand for further consideration of that

report is appropriate.

Remand for further proceedings—not an award of benefits—is also

appropriate as to the question of whether Gaudette's condition meets the criteria

for Listings 12.04 and 12.06.

When the ALJ discussed Listings 12.04 and 12.06, he relied on the

testimony of Dr. Paul Bach. Tr. 17. The ALJ adopted Dr. Bach's opinion in its

entirety. Tr. 17. Dr. Bach testified as to his findings with regard to both the B and

8

C criteria for Listing 12.04 and 12.06. *Id.* In order to satisfy Listing 12.06, the claimant must satisfy certain A and B criteria or A and C criteria. But to satisfy Listing 12.04, the claimant must satisfy the A and B criteria or just the C criteria.

The B criteria for Listing 12.04 and 12.06 are identical. That set of criteria requires the claimant to show at least two of the following: (1) marked restriction of activities of daily living; (2) marked difficulties in maintaining social functioning; (3) marked difficulties in maintaining concentration, persistence, or pace; or (4) repeated episodes of decompensation, each of extended duration. 20 C.F.R. Part 404, Subpart P, Appendix 1, §§ 12.04, 12.06. The ALJ relied on Dr. Bach's testimony and concluded that Gaudette did not satisfy the B criteria. Tr. 17. Gaudette does not dispute this conclusion.

The C criteria for Listing 12.04 and 12.06 are different. The C criteria for Listing 12.04 requires the claimant to show:

> Medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:
>
> 1. Repeated episodes of decompensation, each of extended duration; or
>
> 2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or

9

3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.04.

The C criteria for Listing 12.06 requires the claimant to show that she has an anxiety related disorder "Resulting in complete inability to function independently outside the area of one's home." *Id.* at § 12.06.

As an initial matter, the ALJ never addressed the C criteria for Listing 12.06. *See* Tr. 17–18. When the ALJ discussed the C criteria, he did so only with respect to Listing 12.04. *Id.* This alone might be reason for remand. But this matter should also be remanded because the ALJ incorrectly evaluated the C criteria for Listing 12.04.

Dr. Bach concluded that Gaudette met criterion 2 of the C criteria for Listing 12.04. He testified: "[Gaudette has] a residual disease process that has resulted in such marginal adjustment that a change in the environment would be predicted to cause the individual to be compensated." Tr. 99. Dr. Bach explained that "if you stick [Gaudette] anyplace other than the relatively safe holding environment she's created for herself," she will likely be decompensated. Tr. 99.

As noted above, the ALJ adopted Dr. Bach's opinion on this criterion, but the ALJ nonetheless concluded that the criterion was not met because Dr. Bach did

10

not express any opinion "as to the duration or severity of such an episode." Tr. 18.
This is the only reason why the ALJ concluded that the C criteria for Listing 12.04
was not met. Judge Lynch correctly observed, though, that the criterion does not
require a finding as to the duration or severity of any episode of decompensation.

Given the ALJ's legal error, this matter must be remanded. The question,
though, is whether it should be remanded for an award of benefits or for further
proceedings.

Judge Lynch recommends remanding for further proceedings because it is
not clear whether the ALJ would be required to find Gaudette disabled if he had
properly considered Dr. Bach's opinion as to the C criteria for Listing 12.04. In
particular, Judge Lynch noted that neither Dr. Bach nor the ALJ commented on
whether Gaudette satisfied the prerequisite criterion of the C criteria, which
requires a "[m]edically documented history of a chronic affective disorder of at
least 2 years duration that has caused more than a minimal limitation of ability to
do basic work activities, with symptoms or signs currently attenuated by
medication or psychosocial support . . . ." 20 C.F.R. Part 404, Subpart P, Appendix
1, § 12.04.

Judge Lynch is correct. The record does not clearly show whether
Gaudette's condition meets this prerequisite requirement. And Gaudette makes no

11

argument to the contrary in her objections.

A remand for an award of benefits is not appropriate here because there are outstanding issues that must be resolved and the record does not clearly show that Gaudette is entitled to benefits. *Taylor*, 659 F.3d at 1235. The ALJ "is in a better position to evaluate the medical evidence." *Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990) (" We remand this case to the Secretary for proper consideration of step three equivalence because he is in a better position to evaluate the medical evidence.")

On remand, the ALJ must properly consider Dr. Didriksen's report and address the C criteria for Listings 12.04 and 12.06, including the prerequisite requirement for Listing 12.04.

## III. Medical opinions of Drs. Rea and Rogers

Gaudette insists that the ALJ should not have rejected the medical opinions of Drs. Rea and Rogers. Judge Lynch recommends concluding that the ALJ properly rejected those opinions. The Court agrees with Judge Lynch.

Drs. Rea and Rogers are Gaudette's treating physicians. The ALJ may reject the controverted opinion of a treating physician only "by providing specific and legitimate reasons that are supported by substantial evidence in the record." *Taylor*, 659 F.3d at 1233 (citations and internal quotation marks omitted). The

12

ALJ can make this showing by "setting out a detailed and thorough summary of

the facts and conflicting clinical evidence, stating his interpretation thereof, and

making findings." *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007) (citations and

internal quotation marks omitted).

Judge Lynch correctly concluded that the ALJ provided specific and

legitimate reasons for rejecting Dr. Rea's opinion. The ALJ explained that Dr.

Rea's self-described specialties—naturopathy and clinical ecology—are not

recognized medical specialties. Tr. 25. Moreover, the hair analysis and

pupillography SPECT scan tests that Dr. Rea performed are not valid scientific

tests. *Id.* These conclusions are supported by testimony from Dr. Brenner, a

physician with the state. Tr. 857–64.

Contrary to Gaudette's suggestion, the ALJ did not reject Dr. Rogers'

opinion. Instead, he afforded it "great weight." Tr. 25. Dr. Rogers believed that

Gaudette should "avoid all chemicals, fragrances, and smoke, etc., as much as

possible at home and in the work place." Tr. 329. And, as Judge Lynch observed,

the ALJ essentially agreed with that conclusion, finding that Gaudette "must avoid

even moderate exposure to chemicals, fumes, odors, dust and gas" and could have

only "arms-length contact" with a "minimal number of co-workers." Tr. 18. The

ALJ's finding is consistent with Dr. Roger's opinion that Gaudette should avoid

13

chemical exposure as much as possible.

Gaudette makes much out of Dr. Roger's use of the word "all" in his recommendation that Gaudette should "avoid all chemicals, fragrances, and smoke, etc., as much as possible at home and in the work place." *See* Tr. 329. Gaudette argues that, since Dr. Rogers used the word "all," the limitation he describes is more restrictive than the limitation described by the ALJ. The ALJ stated that Gaudette "must avoid even moderate exposure to chemicals, fumes, odors, dust and gas" and could have only "arms-length contact" with a "minimal number of co-workers." *See* Tr. 25.

Gaudette's argument misses the mark. The word "all" in Dr. Rogers' statement modifies the elements that Gaudette should not be exposed to—that is, Gaudette should avoid exposure to all "chemicals, fragrances, and smoke, etc." The word "all" does not modify or describe the level of exposure. In other words, Dr. Rogers did not state that Gaudette must avoid "all" levels of exposure. He stated only that Gaudette must avoid exposure "as much as possible." This is consistent with the ALJ's finding.

The ALJ did not err when he rejected Dr. Rea's opinion. Nor did he improperly discount Dr. Rogers' opinion.

14

## IV.   "Other source" evidence

Gaudette next argues that the ALJ improperly rejected evidence from "other sources." "Other source" evidence is evidence other than that from an "acceptable medical source[ ]." *See* 20 C.F.R. § 404.1513(a), (d). Judge Lynch concluded that the ALJ had effectively given credit to the evidence from other sources because the ALJ concluded that—consistent with the other-source evidence—Gaudette suffered from chemical sensitivities and mental impairments that significantly limited her ability to perform work-related tasks. Judge Lynch's analysis is correct.

An ALJ may reject "other source" opinions only by providing "germane" reasons as to each witness at issue. *Turner v. Commr. of Soc. Sec.*, 613 F.3d 1217, 1224 (9th Cir. 2010).

Here, Gaudette's other-source evidence comes from various providers, many of them naturopathic providers, and a registered nurse, who treated Gaudette for various health care issues. (*See e.g.* Gaudette's Statement of Undisputed Facts, doc. 13 at 9–16.)

The ALJ provided germane reasons for rejecting the health-care opinion of the registered nurse—the registered nurse "far exceeded her level of medical training in continuing to treat the claimant over a period of several years." Tr. 28.

15

As to the other "other source" evidence, Gaudette argues that the evidence
shows that she must avoid "all" chemical incitants on account of her chemical
sensitivities. (Gaudette's Objections, doc. 27 at 10). She insists that the ALJ
ignored and rejected this evidence.

The ALJ provided a detailed recounting of Gaudette's other-source
evidence. *See* Tr. 18–28. And the ALJ concluded that—consistent with much of
the other- source evidence—Gaudette "must avoid even moderate exposure to
chemicals, fumes, odors, dust and gas." Tr. 18. The ALJ concluded that, because
of her chemical sensitivities, Gaudette is "limited to work environments which
would allow a minimal number of co-workers and interaction, which again would
be limited to arms-length contact." *Id.* The ALJ's conclusion is broad and
consistent with the other source evidence.

The ALJ did state, though, that Gaudette has no sensitivity to known
natural, environmental irritants. Tr. 25. To the extent that this conclusion is
inconsistent with the other-source evidence, the ALJ adequately explained why he
reached that conclusion. *See* Tr. 24–25. The ALJ observed that Gaudette had lived
outdoors for months at a time during the relevant period and no issues with
"grasses, pollen, leaves and leaf mold, or weeds." Tr. 25.

More generally, Gaudette fails to specifically identify any other-source

16

evidence that the ALJ rejected. She insists only that the ALJ improperly rejected evidence that shows she "need[s] to avoid all incitants." (Gaudette's Objections, doc. 27 at 10.) Gaudette does not identify which specific pieces of evidence that the ALJ rejected. While her objection fails on the merits, it alternatively fails because Gaudette has failed to state her objections with specificity. *See Eastman v. Swanson*, 2012 WL 2862439 (D. Mont. July 11, 2012).

## V.   Past relevant work and other work

Gaudette's final objection is that Judge Lynch did not address her claims regarding her past relevant work.

In her summary judgment brief, Gaudette challenges the ALJ's conclusion that she could perform her past relevant work as an underwriter and claims representative. (Gaudette Opening Br., doc. 12 at 26–27.) Gaudette also takes issue with the ALJ's conclusion that she could perform other jobs, such as a data exam clerk, telephone representative, survey worker, and data entry operator.

At Step 5 of the five-step sequential analysis, the ALJ must assess whether the claimant can perform past relevant work or other work in light of the claimant's residual functioning capacity. *See* 20 C.F.R. § 404.1520(a)(4)(v); (g). If the claimant can perform past relevant work or other work, then the ALJ will conclude that the claimant is not disabled. *Id.* at § 404.1420(g).

17

## A.    Past relevant work

Gaudette disagrees, for two reasons, with the ALJ's conclusion that she can perform her past relevant work as an underwriter and claims representative.

First, Gaudette claims she cannot perform the jobs because, as the ALJ concluded, she can have only minimal interaction with co-workers, supervisors, and the public. Gaudette testified that she had to interact with staff and make public presentations when she worked as a claims representative and underwriter. Tr. 68. The ALJ never addressed her testimony, though. When the ALJ questioned the vocational expert, both the ALJ and the vocational expert assumed that both of Gaudette's former jobs could be performed solely by telephone or video conference without "deal[ing] person to person with people." *See* Tr. 103–04. Neither provided any reasons for rejecting Gaudette's testimony that she did, in fact, have to interact with co-workers and work indirectly with the public.

Second, Gaudette claims that the record shows that she would have to miss more than two days per month due to her symptoms and that, as a result, she would not be able to do her work at the "substantial gainful activity" ("SGA") level. See 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. § 404.1520(a)(4)(i)–(v). Her claim is consistent with the vocational expert's testimony. The vocational expert testified that an underwriter or claims representative would not be able to work at

18

the substantial gainful activity level if either (a) the employee had to occasionally miss two or more days per month or (b) take longer breaks than normal. Tr. 105. The ALJ, though, did not provide any reasons for rejecting Gaudette's testimony that she was fired from her previous job precisely because she was not able to work a full, eight-hour day on account of her alleged disability.

On remand, the ALJ must address Gaudette's testimony regarding (1) her potential interaction with others while working as an underwriter and claims representative and (2) the amount of time she is able to work at these jobs.

**B.    Other work**

The ALJ also concluded that Gaudette had the ability to do other work as a data exam clerk, telephone representative, survey worker, and data entry operator. Gaudette disagrees with this conclusion for two reasons.

First, Gaudette argues that three of the four jobs—data exam clerk, telephone representative, and data entry—are semi-skilled jobs that Gaudette claims she could not perform. Dr. Didriksen wrote in her report that Gaudette has difficulty with "new learning and problem solving, abstract reasoning, concept formation, mental efficiency, and judgment as well as the ability to deal with unique or novel problem-solving situations." Tr. 1539. As detailed above, the ALJ did not consider Dr. Didriksen's report. Since this matter is being remanded to the

ALJ for consideration of that report, the ALJ is ordered to also consider Dr. Didriksen's report in the context of whether Gaudette can perform semi-skilled jobs and other work.

Second, Gaudette claims that all four of the other jobs are performed exclusively by phone, and she is therefore not able to perform them because she wears a multi-layer mask. Gaudette testified that she has been wearing a mask since January 2009, both when indoors and outdoors, to limit her exposure to environmental irritants. Tr. 60, 91. She also testified that her face mask made speaking on the phone for her job "impossible," since the mask made her speech inaudible. Tr. 68. The ALJ concluded that the only jobs that Gaudette could perform are those that she could do telephonically, but the ALJ never addressed Gaudette's purported difficulty using a phone. On remand, the ALJ must address this aspect of Gaudette's testimony.

## CONCLUSION

This matter is remanded for further proceedings. On remand, the ALJ must evaluate Gaudette's claims in light of Dr. Didriksen's report. The ALJ must also reconsider its conclusions with respect to the C findings for Listing 12.04 and 12.06. Finally, the ALJ must reconsider whether Gaudette is capable of performing past relevant work or other work.

20

IT IS ORDERED that Vanessa Gaudette's motion for summary judgment

(doc. 11) and the Commissioner's motion for summary judgment (doc. 19) are

GRANTED IN PART and DENIED IN PART as described in this order.

IT IS FURTHER ORDERED that this matter is REVERSED and

REMANDED to the Commissioner for further proceedings consistent with this

order.

Dated this _10_ day of September 2012.

Donald W. Molloy, District Judge
United States District Court

21